STATE of Wisconsin, Plaintiff-Respondent,

v.

Vincent ANGIOLO, Defendant-Appellant. †

Court of Appeals

*No. 96–0099–CR. Submitted on briefs October 31, 1996.—Decided December 18, 1996.*

(Also reported in 558 N.W.2d 701.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Miller Carroll, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Warren D. Weinstein,* assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. Vincent Angiolo appeals from a judgment of conviction for party to the crime of theft pursuant to §§ 943.20(1)(a) and (3)(c), and 939.05, STATS. Angiolo argues that the trial court erred by denying his motion to suppress evidence seized pursuant to a search warrant. The warrant was issued based on observations made by Angiolo's probation agent during a "home visit." After the warrant was executed, this court reversed Angiolo's conviction which had produced the probation. *State v. Angiolo,* 186 Wis. 2d 488, 492, 520 N.W.2d 923, 926 (Ct. App. 1994) (*Angiolo I*).[1] Seeking to apply this reversal retroactively, Angiolo contends that the probation agent did not have authority to enter his home.

---

[1] We held that the warrantless search of Angiolo's storage garage and the subsequent seizure of certain evidence were invalid under the Fourth Amendment. *State v. Angiolo,* 186 Wis. 2d 488, 492, 520 N.W.2d 923, 926 (Ct. App. 1994). Following our remand, the charges against Angiolo were dismissed.

We conclude that the trial court properly denied Angiolo's motion to suppress the evidence. Accordingly, we affirm the judgment.

## FACTS

In April 1993, Angiolo was convicted in Waukesha County Circuit Court of two felony counts of receiving stolen property. He was placed on concurrent two-year terms of probation. Probation Agent Byron Neal was assigned as Angiolo's supervising agent. Angiolo took an appeal to this court. However, neither the judgment nor the probation provision was stayed pending the appeal.[2]

While pursuing that appeal, Angiolo was arrested by the Village of Germantown Police Department for operating a motor vehicle with an expired registration and operating with a revoked license. After the arrest, the police inventoried the contents of Angiolo's vehicle. They discovered various items which led them to suspect that Angiolo was involved in recent burglaries.

On December 7, 1993, a detective from the Germantown police department contacted Neal and advised that Angiolo was a possible burglary suspect. Neal responded that Angiolo had missed a recent appointment and that he was planning a "home visit" with Angiolo. Neal stated that he would notify the police department if he saw any items that might be stolen. In response, the police department sent Neal a facsimile containing a list of the stolen items.

During the home visit on December 8, 1993, Angiolo led Neal into his garage where Neal observed

---

[2] The trial court in the prior matter did stay a period of confinement in the county jail imposed as a condition of probation pending Angiolo's appeal.

two large tool boxes matching the descriptions given on the list provided by the police department. Later that day, Neal advised the police department of his observations and, armed with this information, the police department sought and obtained a search warrant for Angiolo's residence from the Washington County Circuit Court.[3] The ensuing search of Angiolo's residence resulted in the seizure of various items which led to the charges in this case.

On July 27, 1994, this court reversed Angiolo's Waukesha County conviction. *See Angiolo I.* As a result, Angiolo filed a motion to suppress the evidence seized pursuant to the search warrant. He argued that our reversal retroactively rendered Neal's presence during the home visit illegal, and consequently, Neal's observations could not be used to support the issuance of the warrant. The trial court rejected Angiolo's argument and denied his motion.[4] Angiolo appeals.

## DISCUSSION

The State first contends that Angiolo's argument fails because he did not obtain a stay of the probation. While a stay certainly was an option which Angiolo could have pursued, we do not base our holding squarely on that fact. Instead, we address the issue on a broader front: whether the reversal of a conviction resulting in probation retroactively renders unlawful the acts taken by the probation agent during the supervision.[5]

---

[3] The warrant was issued by Reserve Judge David Dancey.

[4] This ruling was made by Judge Richard Becker.

[5] The State also argues that Neal's observations during the home visit did not constitute a search within the meaning of the law. Since we hold that our prior reversal did not retroactively

We begin by noting that Angiolo properly does not challenge a probation officer's right to conduct a warrantless search. This is in accord with *State v. Griffin*, 131 Wis. 2d 41, 58, 388 N.W.2d 535, 541 (1986), *aff'd*, 483 U.S. 868 (1987), which holds that "based on the nature of probation . . . a probation agent who reasonably believes that a probationer is violating the terms of probation may conduct a warrantless search of a probationer's residence." Nor does Angiolo challenge the trial court's finding that Neal's observations constituted probable cause for issuance of the search warrant.

Instead, Angiolo argues that Neal's observations must be excised from the information given in support of the issuance of the warrant because Angiolo's conviction which produced the probation was subsequently reversed. Angiolo's argument produces an intriguing dichotomy. On the one hand, he concedes that the search warrant was valid when issued and executed. On the other hand, he contends that the warrant retroactively lost its validity by virtue of our reversal in *Angiolo I*. No Wisconsin case has directly spoken to this issue. Nonetheless, by looking to analogous situations involving the law of escape, we disagree with Angiolo's argument.

In *State v. Grobstick*, 200 Wis. 2d 242, 250, 546 N.W.2d 187, 190 (Ct. App. 1996), the defendant had escaped while the police were attempting to execute a bench warrant for his failure to appear in a civil forfeiture proceeding.[6] The defendant argued that he

render Neal's home visit unlawful, we do not address this further argument by the State.

[6] Because the issue had not been preserved in the trial court, the *Grobstick* court addressed the issue under its discretionary powers of reversal recited in § 752.35, STATS. *State*

could not legally commit the crime of escape since the escape statute requires custody for a crime, not a civil forfeiture. *See id.* at 252-53, 546 N.W.2d at 190-91. In the course of its analysis, the court noted the following:

> The actor's innocence of the crime for which he is in custody is no defense to the crime of escape. WIS J I-CRIMINAL 1772 n.4 (quoting Judiciary Committee's 1953 Report on the Criminal Code, cmt., at 191). *See also People v. Hill,* 160 N.E.2d 779, 781 (Ill. 1959) (rejecting contention that a prisoner commits no crime when he escapes unless his commitment is technically lawful in all respects); *State v. Pace,* 402 S.W.2d 351, 353 (Mo. 1966) (authorities agree that defendant's innocence on the original charge, invalidity of the original information or indictment, acquittal, or *reversal of conviction on appeal is not a defense to charge of escape).*

*Grobstick,* 200 Wis. 2d at 254-55, 546 N.W.2d at 192 (emphasis added).

The same rationale applies here. Just as a subsequent reversal of the underlying conviction does not retroactively undo an escape conviction based thereon, we hold that a later reversal of a conviction resulting in probation does not undo the lawful acts performed by the probation agent while conducting the probation supervision. Thus, Neal was lawfully on Angiolo's premises during the home visit.

An appellate reversal of a criminal conviction accomplishes much. It erases the conviction, relieves the defendant from the stigma thereof, and frees the defendant from the obligations and disabilities directly

*v. Grobstick,* 200 Wis. 2d 242, 253, 546 N.W.2d 187, 191 (Ct. App. 1996).

relating to the conviction. However, the reversal does not reach so deep as to retroactively render unlawful those official acts taken under the auspices of that conviction.

The basic simplicity of this case is clouded by the attenuated and circumstantial nature of the facts. Angiolo was a suspect at the time of Neal's home visit. Neal, while conducting the home visit in his agent capacity, was also serving as a conduit of information to the police department. Neal then reported his observations to the police who, in turn, sought and obtained the search warrant which ultimately resulted in the seizure of the incriminating evidence.

But if these intervening events are removed, the basic fact which emerges is that Neal simply made observations which were relevant to likely criminal activity. Viewed in this light, the issue in this case becomes clearer and the correct answer more self-evident. This case is no different than if Neal had directly observed Angiolo commit a crime in his presence during a home visit. We see nothing in the law or public policy which requires that Neal be disqualified as a witness in such a situation simply because the conviction producing the probation was later reversed.

We conclude that the trial court properly denied Angiolo's request to suppress the evidence seized under the warrant. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.